James E. Barton II, 023888
Jacqueline Mendez Soto, 022597
Charles W. Lucking, 031964
Joshua A. Barro, 039369
BARTON MENDEZ SOTO PLLC
6625 S. Rural Road, Suite 111
Tempe, Arizona 85283
(480) 550-5165
James@bartonmendezsoto.com
Jacqueline@bartonmendezsoto.com
Charles@bartonmendezsoto.com
Josh@bartonmendezsoto.com

*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| Living United for Change in Arizona (LUCHA), *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Warren Peterson, *et al.*,<br><br>        Defendants. | Case No.: 26-cv-02320-SMB<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION** |

Plaintiffs hereby respectfully submit their reply to Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary and Permanent Injunction ("Response") [Doc. 10].

**INTRODUCTION**

Plaintiffs dispute Defendants mischaracterization of the facts. As quoted in the Complaint [Doc. 1 ¶ 26], Defendants' order prohibited Plaintiffs from entering the legislative buildings for the remainder of the legislative session—a minimum three-month ban covering the entire building for one alleged incident. It is not true that Plaintiffs were banned exclusively from committee hearings. Defendants cannot change the terms of the written ban in response to this lawsuit, especially after they ignored Plaintiffs' requests for clarifying information at the time the bans were issued.

As stated in the Complaint, some Plaintiffs spoke out of turn during a committee hearing[1], but not all Plaintiffs did so. [Doc. 1 ¶ 39] Nonetheless, all of them were equally banned. The common characteristics of those who were banned are that they are Latino or indigenous and they are affiliated with LUCHA.

Plaintiffs' confidently assert that Defendants based their decision on Plaintiffs race and affiliation with LUCHA because White individuals, some of whom were with Plaintiffs, spoke out of turn but they were not banned from the legislative buildings. [Doc. 1 ¶ 46] The inferiority with which Defendants view Plaintiffs is palpable even in the language they use before this Court in their Response, referring to Plaintiffs and their free speech as puerile, caterwauling, churlish, shenanigans, lacking in kindergarten skills, unintelligible, and odious, among many other degrading descriptions. The animosity they hold toward people like Plaintiffs led them to issue an unreasonably restrictive order which they now attempt to unconvincingly scale back.

Plaintiff Alvarez, whose speech Defendants consider unintelligible and incoherent [Doc. 10 14:19-20], was also prohibited from going *inside* the House building because of *outdoor* activity. [Doc. 1 ¶ 29; Doc. 10-1] The only activity that Alvarez has engaged in outside on Capitol grounds is free speech. The House officers, whose names are now

---

[1] Defendants correctly point out that the hearing on January 26, 2026, was related to Senate Bill 1055 [Doc. 10 at 2:12-14], not Bill 1570 as stated in the Complaint [Doc. 1 at 19.]

known—DPS Legislative Laison Art Avitia and Arnold Stolz—issued an oral no-trespass order and threatened Alvarez with arrest if he entered the building, just like the written order issued by the Senate Sergeant at Arms, Joseph Kubacki. If Alvarez violated outdoor ground rules, which he denies, banning him from entering the building does not correspond with the alleged violation.

Further, Plaintiffs deny directly or substantially thwarting ongoing legislative work [*Cf.* Doc. 10 8:17-18] or engaging in conduct that requires being banned from the legislative buildings for the months-long legislative session. Defendants cannot undo or lessen the unreasonably restrictive and unconstitutional ban by claiming that they were never banned from entering the building to begin with. [Doc. 10 3:9-12; 4:3-4] Neither absolute nor qualified immunity protect or excuse Defendants' actions.

## ARGUMENT

In this Reply, Plaintiffs focus on the merits of their claim and why they have a strong likelihood of prevailing. The other factors around preliminary injunction, however, are plainly in Plaintiffs' favor. It is Plaintiffs' who are being irreparably harmed by being deprived of their right to petition their government. It is plainly public policy to prevent such harm as has been enshrined in our Constitution for nearly two and a half centuries.

## I.   DEFENDANTS DO NOT HAVE ABSOLUTE IMMUNITY

### A.   The Test for Legislative Acts

Absolute legislative immunity attaches only to legislative acts. Ejecting Plaintiffs from the hearings and prohibiting their reentry into the legislative buildings for months does not qualify as a legislative act. An act is legislative based on its nature, not based on motive or intent. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). A legislative act reflects "discretionary, policymaking" choices, "prospective implications that reach well beyond the particular occupant of the office," and it occurs "in a field where legislators traditionally have power to act." *Id.* at 55-56.

The court considers: (1) whether the act is ad hoc decision-making or policy formulation; (2) its application to specific individuals or the public; (3) formal legislative

2

character; and (4) the hallmarks of traditional legislation. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 977 (9th Cir. 2010) (en banc) (quoting *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003)). The factors are independent of each other. *See id.* (denying immunity where not all factors were met).

### B.   The No-Trespass Orders Are Administrative, Not Legislative

The no-trespass orders fail every factor. Defendants formulated no rule of conduct. They applied A.R.S. § 41-1221(B) to specific individuals on specific dates based on specific allegations. Sergeant Kubacki alleges that the orders were based on inquiry and review and on "security personnel's good faith determinations." [Doc. 10-3 ¶¶ 5-9, 16.] They regulated no future conduct of legislative-building visitors generally and established no rule that would govern anyone else. The trespass orders were not enacted through any type of legislative process. Defendants' own brief concedes the point: the trespass notices were "issued" by the Sergeant at Arms [Doc. 10 at 3] and the House action was a refusal of "admission" by a "security agent" [*Id.* at 4].

The orders bear none of the hallmarks of traditional legislation. They produced no written rule, created no obligation that any other person could read or comply with, and imposed an immediate sanction (exclusion from a public building under threat of arrest), retrospectively, for past alleged conduct. *Norse* held the same on closely parallel facts: where council members "did not take any formal legislative action, but rather ordered Norse out of the room," their conduct "lacked the hallmarks of the legislative process" and was administrative, not legislative. *Norse*, 629 F.3d at 977.

### C.   Enforcement Is Not Legislation

Even if Defendants were acting pursuant to legislative rules, their enforcement against citizens is not a legislative act. The Supreme Court has so held since 1880. In *Kilbourn v. Thompson*, 103 U.S. 168 (1880), the House passed a resolution holding a witness in contempt and authorizing his arrest, and the House Sergeant at Arms executed the resolution by jailing him for forty-five days. The Court held the Members immune for their votes but allowed the suit against the Sergeant at Arms to proceed. *Id.* at 202. The

Court reaffirmed the distinction in *Powell v. McCormack*, 395 U.S. 486 (1969), allowing suit against the House Sergeant at Arms, Clerk, and Doorkeeper for executing the House's exclusion of Adam Clayton Powell. *Id.* at 504. The Court grounded that holding in *Kilbourn*, which "decisively settles this question." *Id.* at 505.

The Ninth Circuit applies the same rule. In *Schultz v. Sundberg*, 759 F.2d 714 (9th Cir. 1985), the Alaska Senate President was absolutely immune for ordering compelled attendance of an absent legislator, but the officers who executed the order were entitled only to qualified immunity. *Id.* at 717-18. *Norse* applied the same line: the council members who ordered the ejection received no absolute immunity (the act was administrative), and the sergeant-at-arms who carried it out was analyzed under qualified immunity, not absolute legislative immunity. *Norse*, 629 F.3d at 977-78. The trespass orders here are enforcement, not legislation. Whether they were issued by the Sergeant at Arms on his own initiative, at the direction of Defendants Petersen and Montenegro, or pursuant to a settled practice within the Senate President's and Speaker's offices, the act is the same. It is not within the legislative sphere.

### D.   Defendants' Authorities do Not Support a Different Result

Defendants describe *Gays Against Groomers v. Garcia*, 169 F.4th 981 (10th Cir. 2026), as "a case that bears parallels to this one." [Doc.10 at 7.] The case bears parallels, but as Defendants argue. The court's holding extended only to in-hearing procedures:

> "This might have been a different case if the Legislators were empowered to seek civil damages, conduct criminal prosecution, see *Kilbourn v. Thompson*, 103 U.S. 168, 26 L.Ed. 377 (1880), or ban the plaintiffs from ever speaking at the Colorado General Assembly again. This latter example was the case in *Kamplain v. Curry County Board of Commissioners*, another case that GAG relies upon."

*Id.* at 999. *Kamplain* held that banning a citizen from attending future meetings was administrative because "the circumstances of this case did not concern the enactment or promulgation of public policy." 159 F.3d 1248, 1252 (10th Cir. 1998). Our case is the *Kamplain* case. Plaintiffs were trespassed from the entire Senate building under threat of

criminal arrest for the remainder of a months-long legislative session. [Doc. 1 ¶¶ 25-26.]

Defendants also cite cases for the proposition that "regulating access to, and conduct within, legislative chambers is integral to the legislative process." [Doc.10 at 7.] The cases say something narrower. *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975), concerned the accreditation of press correspondents to the press galleries of Congress, where rules controlled who could observe legislative proceedings from inside the chamber. *Id.* at 1349-50. *Nat'l Ass'n of Social Workers v. Harwood*, 69 F.3d 622 (1st Cir. 1995), concerned a rule banning lobbyists from the floor of the Rhode Island House while the House was in session. *Id.* at 624. Both cases concerned in-chamber, in-session access to the legislative process itself. The trespass orders here are not in-chamber access regulations. They were issued after plaintiffs had left the hearing rooms and walked out of the building, and they barred plaintiffs from re-entering the building for any purpose. [Doc. 1 ¶¶ 22, 40.]

### E.      Defendants' "Rules Require Enforcement" Argument Misreads *Bogan*

Defendants argue that "[b]ecause parchment directives necessitate practical enforcement, the Plaintiffs' temporary exclusion from committee hearings is, under the circumstances, likewise an immune legislative act." [Doc.10 at 7.]  *Bogan* forecloses defendants' theory that any enforcement of a legislative rule is itself legislative.  The test is the nature of the act. *Bogan*, 523 U.S. at 54. A legislator who votes for a criminal statute performs a legislative act; a police officer who arrests a citizen under that statute does not. Every enforcement action is downstream of some legislative authorization, but proximity does not transform enforcement into legislation. Otherwise, no enforcement would ever be subject to suit.

## II.    *REZA v. PEARCE* FORECLOSES QUALIFIED IMMUNITY

### A.      *Reza* Confirms that the Right at Issue Is Clearly Established

In *Reza v. Pearce*, 806 F.3d 497, 501-02 (9th Cir. 2015), then-Senate President Russell Pearce ordered Salvador Reza barred from the Senate building for the remainder of the legislative session, on the asserted ground that Reza had disrupted a committee

hearing. Pearce issued the ban through Senate officers, including the Sergeant at Arms, Joseph Kubacki, the same officer who issued the trespass orders here. *Id.* at 500-01. The Ninth Circuit held that the Senate building is a limited public forum, *id.* at 503, and that "a complete bar on Reza's entry into the [Senate] Building," *id.* at 505 exceeded the bounds of reasonableness clearly established by *White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266 (9th Cir. 1995); and *Norse*, 629 F.3d 966, Reza, 806 F.3d at 504-06.The court denied Pearce qualified immunity. *Id.* at 506. The factual parallels to this case are very close: the same building, the same Sergeant at Arms, the same statutory framework (A.R.S. § 41-1221), and the same kind of session-long ban imposed in response to alleged committee-hearing disruption. With *Reza* on the books since 2015, no reasonable official could have believed that issuing session-long building bans against citizens accused of hearing-room disruptions was constitutional.

### B.    Defendants' Three Distinctions of *Reza* Fail

Defendants offer three distinctions, none of which works. *First*, defendants relegate to a footnote the argument that Pearce raised only qualified immunity in *Reza*, so the Ninth Circuit "had no occasion to opine on the applicability of the absolute legislative immunity." [Doc. 10 at 6 n.4.] *Reza* applied the Ninth Circuit's First Amendment precedents on building exclusions and limited public forums, the same body of law that establishes the trespass orders here are administrative rather than legislative. *Norse*, 629 F.3d at 977. The doctrinal foundation of *Reza* forecloses both immunities. *Second*, defendants contend the Plaintiffs "knowingly" disrupted legislative work. [Doc.10 at 7.]  Plaintiffs dispute that characterization. [Doc. 1 ¶¶ 27, 38, 43-49.] But *Reza*'s holding did not turn on the absence of disruption; the Ninth Circuit acknowledged Reza had been removed from the hearing room, 806 F.3d at 501-02, and held nonetheless that a complete building ban was unreasonable as a matter of law. *Id.* at 504-05. The disproportion between in-hearing conduct and a session-long building ban exists here whether or not Plaintiffs' alleged conduct met Defendants' description. *Third*, Defendants point to a single occasion on which one plaintiff, Mendez, was admitted for a meeting with Senator Miranda. [Doc.10

at 7 (citing Doc.10-3 at ¶ 12).] The trespass notices on their face declared each plaintiff "formally trespassed from the Senate building for the duration of this Legislative Session" subject to "arrest." [Doc. 1 ¶ 26.] A single discretionary admission does not narrow what the notices say on their face, and *Reza*'s reasoning in any event did not turn on the absoluteness of the ban there.

**III.    THE NO-TRESPASS ORDER IS THE CHALLENGED RESTRICTION**

**A.    The No-Trespass Order, not A.R.S. § 41-1221, is at Issue**

Plaintiffs challenge the no-trespass order, not A.R.S. § 41-1221(B) or its application. The statute provides no authority to ban Defendants. It is silent on procedures for removal from the legislative premises or the duration and scope of exclusionary measures. The ban itself constitutes an unauthorized administrative action that goes far beyond what the statute permits. In *Reza*, the Ninth Circuit evaluated Pearce's building-wide ban as the challenged government action, regardless of what statutory authority he may have claimed. 806 F.3d at 499, 503.

Also, the actual ban issued to Plaintiffs is at issue, not Defendants' post-hoc recharacterization of the ban. The hand-delivered no-trespass order states that Plaintiffs are "formally trespassed from the Senate **building** for the duration of this Legislative Session." [Doc. 1 ¶ 26.] (Emphasis added.) The notice does not contain qualifying language or exceptions for specific activity or spaces within the building. The ban applies to the entire building regardless of what Defendants say now in the course of litigation. Likewise, Plaintiff Alvarez was not permitted to enter the House building and was threatened with arrest if he did. [Doc. 1 ¶ 29.]

Further, Defendants' staff applied the ban to the entire building, discrediting the existence of a now-reduced ban. On February 2, the Kubacki denied Mendez's and Alvarez's entry into the Senate building. [Doc. 1 ¶ 23.] On February 11, House guards denied Alvarez entry into the building. [*Id.* ¶ 29.] On February 20, Senate guards denied the remaining Plaintiffs entry into the building. [*Id.* ¶ 41-42.] In fact, the one-time Plaintiff Mendez entered the building at the invitation of her elected representative, Kubacki

confronted her in the elevator and told her she would be arrested if she re-entered. Plaintiffs will also show that they and others requested that Defendants clarify the extent of the ban, but they failed and refused to respond.

Defendants cannot moot the need for injunctive relief by now claiming that the ban was of limited application or no longer applies due to the end of committee hearings or the legislative session. *See Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (applying *Knox v. Serv. Emps. Int'l Union, Local 100*, 567 U.S. 298, 307 (2012) that cessation of the challenged conduct does not render relief moot because the conduct may resume after the case is over).

**B.      The No-Trespass Order is Unreasonable**

Even in a limited public forum, such as the hearing rooms inside the Capitol building, Plaintiffs' exclusion must satisfy both reasonableness and viewpoint neutrality. *See Sammartano v. First Judicial District Court*, 303 F.3d 959, 967 (9th Cir. 2002) *overruled on other grounds*. To be reasonable, the restriction must reasonably fulfill a legitimate need; however, the government's failure to select "simple available alternatives suggests that the ban it has enacted is not reasonable." *Id.* (citing to *Tucker v. State of Cal. Dept. of Educ.*, 97 F.3d 1204, 1215 (9th Cir. 1996).

The reasonableness of the restriction is undermined by its breadth and duration: a blanket ban from the entire legislative building for the remainder of the legislative session — February through May 22 — is not narrowly tailored to the government's interest in orderly proceedings. A proportionate response to a single disruptive incident would be removal from the specific hearing at issue, not a prospective ban from all future hearings. Furthermore, as stated in the Complaint, not all Plaintiffs engaged in the alleged disruptive conduct [Doc. ¶¶ 39,61], yet all named Plaintiffs received the trespass notices, establishing that the restriction was not carefully calibrated to individual conduct. The government's latitude in a limited public forum does not extend to prophylactic, categorical exclusions of groups of citizens from ongoing legislative proceedings based on the conduct of some members of the group.

Even under Defendants' new interpretation of the ban, the restriction remains unreasonable in duration. A ban from committee hearings for the entirety of a legislative session is overbroad. "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Starkey v. County of San Diego*, 346 Fed. Appx. 146, 149 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

In the case of the House, Defendants claim that there is no current ban against Alvarez [Doc. 10 at 6.] Yet, the same ban was communicated to Alvarez by the House officers: Do not enter the building or you will be arrested. Bans of indefinite duration are unreasonable. In *Reza*, the court stressed that the problem with the building-wide ban was not only its geographic scope, but also its indefinite duration. 806 F.3d at 506.

### C.    The Unreasonable Restriction is Due to Plaintiffs' Viewpoint

As previously stated, Defendants refer to Plaintiffs and their statements in pejorative terms: "puerile," "shenanigans," "caterwauling," "dyspeptic," and "performative." Their reliance on such pejorative rhetoric before this Court only bolsters Plaintiffs' claim that enforcement turned on disfavored speakers, not neutral conduct rules. Viewpoint discrimination can be found where there is discriminatory motive behind the enforcement of a facially neutral regulation. *Cf. United Food & Com. Workers Local 99 v. Bennetti*, 934 F.Supp.2nd 1167, 1190 (D. AZ 2013). Further, the no-trespass order was not specifically addressed to any of the plaintiffs; it did not identify them by name nor did it identify or connect them to the alleged "disorderly behavior." The unspecified, blanket orders endorse and encourage viewpoint-based discrimination.

### D.    Alvarez was Punished for Protected Activity on Capitol Grounds

The House officers prohibited Alvarez's entry into the House building because of activity that allegedly took place *outside* of the building. People have the right to picket, protest, and march in this area. [Doc. 10-1] Alvarez engaged in this protected activity. If a protester uses a bullhorn without an event application, as Alvarez is accused of doing, the resolution is for the volume to be reduced to a reasonable level. [*Id.*] Alvarez's

9

punishment, however, was expulsion from the House building. This is retaliation.

### E.    Plaintiffs Have Distinct Petition and Association Claims

Plaintiffs' right of petition claim has an independent basis that is not merely a relabeled speech claim. The right to petition the government — including by attending and participating in legislative hearings and meeting with legislators — is a distinct constitutional right. Excluding citizens from the very legislative proceedings where they seek to petition their government for redress of grievances implicates the Petition Clause in a direct and non-derivative way. Similarly, LUCHA is a named plaintiff and a community organization whose members were collectively excluded, raising associational concerns about the government targeting a specific advocacy group. Thus, concerns regarding the use of the Petition Clause to evade adverse Speech Clause precedent does not apply where, as here, the Petition Clause claim is grounded in the specific act of being excluded from the legislative forum in which citizens literally exercise their petition rights.

### F.    Plaintiffs Plead a Plausible Claim Related to Race Discrimination

Defendants apply an inappropriately demanding pleading standard to the Plaintiffs' racial discrimination claim. The motion needs to demonstrate a substantial likelihood of success as balanced against the potential harm caused to the nonmoving party and the public policy in play in support of its motion for preliminary injunction— it need not provide exhaustive evidentiary detail at the preliminary injunction stage. However, Plaintiffs are willing and able to put on evidence in an evidentiary hearing in support of their claim for injunctive relief.

The Plaintiffs' allegation that White individuals who engaged in comparable conduct were not subjected to trespass notices is a factual allegation, not merely a legal conclusion, and is sufficient to establish the inference of discriminatory enforcement. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The comparative treatment allegation is sufficient to grant Plaintiffs' motion for a preliminary injunction—although clearly Defendants will have an opportunity to put on contrary evidence in the trial on the merits that follows. At no phase of these proceedings should the Court foreclose that

inquiry by applying demanding selective-prosecution standard, a criminal law doctrine under *U.S. v. Armstrong*, 517 U.S. 456, 463-64 — to a civil § 1983 claim.

### G.   Plaintiffs Have a Right to Due Process

Procedural due process requires that before a person is deprived of a constitutionally protected liberty interest—including the right to access a limited public forum for expressive purposes—they receive notice and an opportunity to be heard. *Cf. Zambrano v. City of Tustin*, 885 F.2d 1473, n. 8 (9th Cir. 1989) (confirming the need to provide due process after even when the sanctioning body, in this case the court, has inherent power to sanction). Plaintiffs " need not have identified a fundamental right to establish a violation of [their] procedural due process rights." *Regino v. Staley*, 133 F.4th 951, 967 (9th Cir. 2025). As *Mullins v. Oregon* states: "The more familiar office of the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state." 57 F.3d 789, 795 (9th Cir. 1995).

Even if some Plaintiffs engaged in some disruptive conduct, that does not eliminate the procedural due process violation: the trespass notices were issued to multiple Plaintiffs, including those the Complaint alleges did not engage in disruptive conduct, without any individualized hearing or opportunity to contest the basis for the exclusion. The private interest in accessing legislative proceedings for expressive and petition purposes is significant; the risk of erroneous deprivation is high given the undisputed fact that not all Plaintiffs spoke out of turn; and the government's burden of providing even minimal notice-and-response procedures before issuing a multi-month trespass notice is low. The absence of any formal review process, combined with the breadth of the exclusion, supports the procedural due process claim.

### CONCLUSION

Plaintiffs have shown a likelihood of success, irreparable harm, and that the equities and public interest support narrowly tailored injunctive relief. The motion should be granted.

**DATED** this 15th day of May 2026.

**BARTON MENDEZ SOTO PLLC**

**By**: _____
Jacqueline Mendez Soto
James E. Barton II
Charles W. Lucking
Joshua A. Barro
6625 S. Rural Road, Suite 111
Tempe, AZ 85283

*Attorneys for Plaintiffs*

**Notice of Electronic Filing and Certificate of Service**

I certify that I electronically filed the foregoing with the Clerk of the Court on May 15, 2026, for filing and uploading to the CM/ECF system which will send notification of such filing to the following parties:

Kory Langhofer
Thomas Basile
STATECRAFT
649 N. Fourth Avenue, First Floor
Phoenix, Arizona 85003
kory@statecraftlaw.com
tom@statecraftlaw.com

*Attorneys for Defendants*

**By**: */s/ Rosa Torres* _____